**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:08CR59 |
| v. | § | |
| | § | |
| COLIN NICKERSON | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter having been referred by the Honorable Marcia Crone, the Court has considered Defendant's Motion to Suppress (Dkt. 222). After considering the evidence presented and the arguments of counsel at the July 22, 2008 hearing, the Court finds that the motion should be denied.

In his motion, Defendant seeks to suppress a bottle containing approximately 138 grams of GHB discovered in his motorcycle during a traffic stop conducted by the Dallas Police Department on September 21, 2007. According to Defendant's motion, Defendant was stopped after leaving a house at which Dallas Police were conducting surveillance. The Government argues that Defendant's motorcycle had an expired registration tag and that police officers witnessed him committing various traffic violations after leaving the house, justifying the stop. Defendant claims that the stop was made without probable cause, that the alleged traffic violations were not committed, and that the subsequent search of his person and motorcycle violated his Fourth Amendment rights.

In his motion, Defendant also argues that he has not been provided with a videotape of the stop made the basis of this motion. At the hearing, the Government stated that there was no known tape of the stop, and the testimony of testifying officers supported this. Therefore, that issue requires no additional discussion by the Court in this report.

## EVIDENCE PRESENTED

At the hearing, the Government, represented by Heather Rattan, offered the testimony of Officer Justin Benson with the Coppell Police Department and Officer Allan Villareal with the Dallas Police Department, both of whom were present at the stop in question.  Defendant, represented by Don Bailey, called Officer Herbert Smilie with the Dallas Police Department, Officer Payovich with the Dallas Police Department, who were also present at the stop, and Defendant Colin Nickerson.  Defendant also offered into evidence a copy of the police report of the incident, photographs of Defendant's motorcycle, and a Dallas Police Department order regarding inventory searches.

**<u>Officer Benson</u>**

Officer Benson testified that he was conducting fixed surveillance of a residence that appeared to be owned by co-defendant Keith Haley as part of a joint investigation by the Coppell Police Department and Dallas Police Department.  According to Officer Benson, the house was a known location of illegal drug distribution and trafficking, including GHB and ecstacy.  Benson testified that GHB is a clear liquid which is a bit thicker than water and that, in his experience, it is generally distributed in water bottles or travel sized shampoo bottles.

Officer Benson testified that while he and Dallas Police Detective Barry Ragsdale were conducting surveillance at Haley's home on September 21, 2007, he witnessed Defendant Colin Nickerson arrive on a yellow motorcycle.  Benson testified that Nickerson took nothing with him into the house.  After approximately 5 to10 minutes, Benson observed Nickerson exit the house carrying a large "Dansani" water bottle.  Nickerson placed the bottle under the seat of his motorcycle and left the premises.

Officer Benson testified that he and Officer Ragsdale then followed Defendant for approximately 20 minutes and witnessed Defendant commit numerous traffic violations.   In particular, Benson testified that he witnessed Defendant run a red light, change lanes without signaling, make unsafe lane changes, drive at excessive speeds, follow too closely to other vehicles, and fail to signal prior to turning.   Benson testified that, after seeing an "05" on the plate of the motorcycle, which he believed to indicate a 2005 registration, he also called dispatch to run the registration on the motorcycle and he was advised that the registration expired in 2005.   At the hearing, Benson testified that he has since learned that this date may have been the date of the inspection sticker rather than the registration.

Benson testified that while they followed Defendant, Officer Ragsdale placed a call on his cell phone for marked units to stop Defendant.   Defendant was then stopped by uniformed officers in marked cars.   Officer Benson testified that he and Officer Ragsdale observed the stop from a parking lot.   After seeing one of the uniformed officers open a bottle in Nickerson's possession and pour some of its contents out, Officer Ragsdale exited their car to assist with the stop.   The Government argued that this was because Ragsdale was concerned that the substance might harm the officer or that the officer might destroy potential evidence by pouring more out.

Benson testified that he witnessed Ragsdale talk to other officers and then attempt to get into the seat of the motorcycle, but could not hear their conversation.   Benson did not participate in the search of the motorcycle and remained in his car when the evidence was seized.

**Officer Villareal**

Officer Villareal testified that he was assigned to duty in West Dallas on September 21, 2007 and responded to the radio request for officer assistance in making a stop for a red light violation. When Officer Villareal and his partner Officer Payovich arrived at the scene, another officer, Officer

Willis, had already stopped Defendant.[1]  Officer Villareal testified that Defendant gave him consent to search his person.  Officer Villareal testified that he found a small bottle on Defendant which the officer opened and poured out because he didn't know what it was.  Officer Ragsdale then approached and took possession of the bottle.

At this time, Villareal testified, the officers also learned that Defendant had an outstanding warrant, and Defendant was subsequently arrested and taken into custody for this warrant.  Villareal testified that the most officers he thinks were at the stop were 6, but he did not believe 12 were present (as is indicated by the police report).  Villareal did not participate in the preparation of the police report.

According to Villareal, the motorcycle was later searched and inventoried and a large water bottle was found.  Villareal did not search the motorcycle and does not know which officer did.  Villareal stated that officers arrested Defendant for an outstanding warrant before searching the motorcycle.  Villareal testified that the Dallas Police have certain procedures regarding inventory of vehicles, and because there was nobody there to release the motorcycle to, it was searched and impounded pursuant to that policy.  Villareal testified that Officer Ragsdale was at the scene at the time of the arrest.

**Officer Smilie**

Officer Smilie testified that he received a call from Officer Ragsdale on September 21, 2007 who directed him to stop a motorcycle but did not give him a reason why.  Smilie testified that he did not know whether Officer Ragsdale communicated with any other officers regarding any alleged

---

[1]Officer Willis was apparently on vacation on the date of the hearing and did not appear to testify.

4

traffic violations prior to the stop.  When Smilie arrived at the scene, Officer Villareal, Payovich, and Willis were in the process of placing the Defendant in handcuffs.  Officer Willis was apparently the first officer to make the stop in response to Smilie's radio call.   According to Smilie, Officer Ragsdale walked up after Defendant was arrested.  Officer Smilie believes Defendant gave consent to search the motorcycle but did not actually hear Defendant give consent.  Officer Smilie did not conduct the search of the motorcycle.

### Officer Payovich

Officer Payovich testified that he and his partner responded to a radio call from officers indicating they needed a vehicle stopped.  He testified that he observed one traffic violation (failing to signal on a right turn) and could not remember whether any other traffic violations were reported over the radio prior to the stop.  According to Payovich, Defendant was arrested after the officers discovered there was an outstanding warrant.  Payovich did not conduct the search of the vehicle.

### Colin Nickerson

Defendant testified that he broke the gear shift on his motorcycle shortly prior to his arrest and that this prevented him from going over 60 mph on the date in question, and Defendant denied committing any of the alleged traffic violations.  In particular, Defendant testified he signaled to turn right immediately before the stop.

Defendant testified that, once he was stopped by officers, Officer Villareal asked him where he was coming from and ordered him to empty his pockets.  Defendant stated that Villareal did not ask for consent and that he did not give consent for Officer Villareal to search his person.  Defendant testified he had a bottle of creotine and mints in his pockets.

5

Defendant testified that after Officer Villareal searched his person, Officer Ragsdale approached wearing a ski mask and told him "we can do this the easy way or hard way" and began trying to open the seat to the motorcycle.  Defendant stated that he was not under arrest prior to the attempts to open the seat and that he was arrested only after the bottle was found in the seat. Defendant did not challenge the allegation that the bottle contained GHB, and Defendant conceded that he had an outstanding warrant on the date of the stop.

### ANALYSIS

Police officers may stop a vehicle when there is probable cause to believe a traffic violation has occurred. *United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007).  "The rule established by the Supreme Court in *Whren* allows officers to justify a stop by the occurrence of a traffic violation even though this is not the real reason for the stop." *United States v. Cole*, 444 F.3d 688, 689 (5th Cir.2006) (citing *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed.2d 89 (1996)).  However, the legal justification for the traffic stop must be "objectively grounded."  *Id.*  The Court notes that the officers' versions of the events in this case do not always coincide.  However, the Court finds that on the credible evidence before it, there was probable cause to stop Defendant's motorcycle and that the justification for the traffic stop was objectively grounded as is required in this Circuit.

Officer Villareal testified that he heard over the radio that Nickerson had run a red light and made improper lane changes.  His partner Officer Payovich testified that he saw Nickerson make a right hand turn without the use of turn signals.  And, Benson testified that a check of Nickerson's license plate revealed that its registration had expired, giving another objectively grounded reason for the stop.

6

Although Nickerson denies it, Villareal testified that Nickerson gave his consent to search his person and that Villareal found a small vial containing a liquid substance.  Thereafter, a check was made for Nickerson's record which revealed an outstanding warrant.  Nickerson does not challenge the fact that he had an outstanding warrant at the time of the stop.  According to Villareal, Nickerson was placed under arrest and then an inventory search was done on the motorcycle which revealed the bottle containing GHB.

Defendant's counsel contends that only Officer Smilie communicated with the other officers and never mentioned any traffic violations.  However, the Court notes that at least two officers testified to witnessing a traffic violation which gave the officers the right to make the stop and a separate officer testified to an expired registration which would give rise to a lawful stop, whether it turned out to be an expired inspection or not.

The Court finds that Villareal's testimony that he conducted the inventory search after placing Nickerson under arrest comported with Dallas Police policy.  Since the search was permissible, the evidence was not illegally obtained.

Finally, the Court notes that at the hearing Defendant's counsel objected to the District Court's denial of authorization for payment of a polygraph expert for the purposes of the suppression hearing.  Even if such polygraph evidence is admissible in such proceedings, the Court finds that it was not necessary in this case.  This Court made credibility determinations of all witnesses during the hearing and found Nickerson, as with other witnesses, to be credible in some respects and not credible in other respects.  No polygraph results or expert testimony would have assisted the Court in making such credibility determinations and determining the merits of the motion to suppress.

## RECOMMENDATION

The Court recommends that the District Court **DENY** Defendant's Motion to Suppress.

Generally, any party may serve and file written objections to the findings and recommendations of the magistrate judge within ten (10) days after service of the magistrate judge's report. 28 U.S.C.A. § 636(b)(1)(c). Prior to the hearing in this matter, the parties agreed to shorten the objection period as to this motion to five (5) days.

Therefore, failure to file written objections to the proposed findings and recommendations contained in this report within five days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 24th day of July, 2008.**



DON D. BUSH
UNITED STATES MAGISTRATE JUDGE